## PETER H. GARRISON *vs.* HENRY H. GARRISON et al.

1. A testator devised to H. G. all that part which he then owned of a certain farm lying on the east side of a specified road. After making the will, he purchased half an acre of land, which had before been a part of that farm, and was in possession of that half acre with the other portion of the farm when he died. After making certain other devises and bequests, he gave the residue of his estate, both real and personal, to certain legatees in the will named. There was no special devise of any portion of said farm lying east of said road except the one to H. G. *Held*, that under the will H. G. took the half acre, with the other portion of the farm east of the road, the true construction of the will being that the testator devised the land as owned by him at the time of his death.

2. Where the words of a devise are equivocal, the court will put such a construction on them as to pass the real estate.

3. If the holder of a mortgage, knowing the desire of the mortgagor or person claiming the premises to pay off the mortgage and have it discharged, deny having possession of the mortgage, and thereby deceive the mortgagor and prevent him from having it discharged, the holder of the mortgage is estopped by his fraud from defending the possession of the premises under such mortgage.

In ejectment. Case certified from Passaic Circuit. The facts sufficiently appear in the opinion of the court.

Argued before WHELPLEY, Chief Justice, and Justices OGDEN and VAN DYKE.

*Tuttle*, for plaintiff.

*Barkalow*, for defendants.

The opinion of the court was delivered by

WHELPLEY, C. J. This case is here from the Circuit Court of the county of Passaic, for the advisory opinion of this court upon the construction of the will of Henry G. Garrison. The plaintiff claims under a residuary devise, by which the testator devised the residue and remainder of his estate, both real and personal, to be divided between his two sons, Cornelius and Peter, share and share alike. By another clause of his will, he gave to his son Henry, one of the defendants, all that part *which he then owned* of David Blair's farm, lying on the east side of the road leading from late C. M. Vreeland's to Weazel, subject to the payment of one hundred dollars to his daughter Margaret.

The will was dated the 24th March, 1849. He died on the 4th May, 1851.

The premises for which the action of ejectment was brought was one-half an acre of land, once a part of the David Blair farm, and situate on the east side of the road mentioned in the last devise.

On the 6th of June, 1843, the testator, who then owned

this half acre as a part of the David Blair farm, conveyed it to his son, David Garrison.

On the first day of February, 1851, Nathaniel Lane, sheriff, conveyed the half-acre lot to the testator, who immediately went into possession, and remained in possession until his death. His widow then took possession, and remained in possession until her death. The defendant then took possession, and now holds it.

The jury found, under the direction of the court, a special verdict, or, rather, a verdict for the plaintiff, subject to certain facts, which they also found; that the premises were a part of the David Blair farm; that the description in the devise would have included the half acre, if the words "which I now own" had not been used in the will; that Peter H. Garrison was the one named in the residuary clause of the will, and that he tried to pay off a mortgage upon the half acre, and that said Henry H. Garrison withheld from the agent of Peter, who inquired of him, the fact that he was then the possessor of a mortgage upon the premises assigned to the widow of the testator, November 11th, 1852. Her administrator assigned it to the defendant, September 25th, 1858, when there was due upon it $50.27, which defendant paid to the administrator, who distributed the money among the children of Peggy Garrison, testator's widow. The plaintiff received his share of the money.

Two questions were argued—

1. Did the devise to Henry carry the land, or was it part of the residuum of the estate?

2. Was the defendant estopped from claiming possession under the mortgage by the facts stated in the verdict?

By the act of March 12th, 1851, entitled "A supplement to the act entitled an act concerning wills," it was provided that real estate acquired by a testator after making his will, should pass by any general or special devise or sale under any power of sale contained in the will of

any person dying after the fourth day of July, 1850, sufficient to include it, had the same been acquired before the making of the will, unless a contrary intention be manifest on the face of the will. The testator died on the 4th of May, 1851, after the passage of the act, which went into effect immediately, and after the time named in it.

The question is not whether the land passed by the will, for, if it did not pass by the special devise, it certainly did under this act by the residuary devise.

The object of the act was to prevent intestacy as to lands, which often occurred under the common law rule that, after acquired lands did not pass by a will, either by force of general or special words, although it might be manifest that the testator designed by will to dispose of his whole estate.

The question should be considered as if there were no residuary clause, so far as the construction of the special devise is concerned. Would the land have passed by that devise, had there been no other in the will?

If the words had been, I give and devise the David Blair farm, which is now owned by me, it might, perhaps, have been a correct interpretation of the language to have held the words "which is now owned by me," as no part of the description, but a mere assertion of a non-essential fact; that the language was equivalent to, my David Blair farm, lying, &c.

The devise would have been sufficient to include it, had it been acquired before the making of the will, for the word "my" would then have been a true description. Apply the same principle to the words as they are. If he had owned the half acre when he made his will, the phrase "which I now own" would not have excluded the half acre from the description. The words "all that part" would then have had an appropriate meaning, referring to locality, instead of ownership. If no part of the David Blair farm had been situate west of the road, then the words "which I now own" must have qualified the words

"all that part." They could have had no other meaning. The difficulty grows out of the fact that the David Blair farm lies on both sides of the road, and that part of it was then owned by the testator, and part not: so that the words "all that part" may refer to the location of the land only, or the ownership, or both.

It would seem to harmonize with the design of the act, where the words are equivocal, to put such construction upon them as to pass the real estate.

There are no words in the will manifesting an intention that after acquired property should not pass by it, nor are there any words showing that the testator contemplated, when he made the will, this acquisition of this property; nor, if that was at all material, was there any evidence in the cause that he then had any such idea. How can it be said, then, that an intention is manifest on the face of the will that Henry should not have the half acre ?

By the act, to cut off Henry from the benefit of the devise, an intention must be manifested that is made clear, that he should not have it. If the general words of description give it to him he should take it, unless the intention is clearly manifested that he should not have it.

A literal interpretation of the act gives the land to Henry, for the will is to be construed as if the testator had owned the land when he made the will. That is the effect of the language employed.

The principle upon which the act rests is, that the will is to be construed as if made at the death of testator. If this will had been so made the land would have passed to Henry. It is upon this principle that the claim of the residuary devisee rests, for the testator could have had no actual intention to give the land to either. A rule of construction ought to be adopted which will apply to all cases and solve all doubts in the same way. It is manifestly unjust to make the testator use the word "now," in the specific devise to Henry, as relating to the time of making the will, and the word "my," both signifying

Garrison v. Garrison.

present ownership in the residuary clause as denoting ownership at the time of his death.

Mr. Jarman, in his *Treatise on Wills* 291, speaking of the construction of the act of 1 *Victoria*, c. 26, § 26, which provides that every will shall be construed with reference to real estate and personal estate comprised in it, to speak and take effect as if it had been executed immediately before the death of the testator, unless a contrary intention shall appear by the will, (from which our act of March 7th, 1850, was copied, *Laws of* 1850, *p.* 281, now repealed and supplied by the act under consideration,) says, "Another question will be, whether the enactment which makes the will speak from the death will have the effect of carrying forward to that period words pointing at the present time." For instance, supposing a testator to bequeath "all that messuage in which I now reside," and that subsequently to the making of the will he changed his residence to another house belonging to him, where he continued to reside until his death, does the act make the word "now," apply to the house occupied by the testator at his death? It is conceived, he says, that this would be considered a case in which a contrary intention appears by the will. Here it is obvious to remark that there is no description of the property—nothing whatever to identify it, save its designation as the testator's residence. The case supposed is extreme where the whole description of the subject of the devise depends upon a question of time. In the present case time only enlarges, but does not change the subject. In the one case, when used, they altered the meaning of the devise, in the other not.

The difficulties which grow out of an attempt to frame a more just rule than that of the common law are strikingly shown by this supposed case, but the result of giving the land to the residuary devisee in this case is equally destructive of the intent of the testator; he never intended he should have it; he gave him, or intended to do so, only the residuum as it then was. If the actual intent be frustrated at all by such an act, where are you to

Garretson v. Garretson.

stop? Will the flagrancy of the case at all alter the principle? It would seem not. By the common law rule, the land would have descended to the heirs-at-law, because the testator's declared intention had not cut them off—his will as to those lands had not been expressed. But the statute steps in, and says the heirs-at-law shall not have them, but a person to whom the testator could not have meant to give them shall. The statute in such a case makes the will, not the testator; he shall be held to have said so because he has not said the contrary.

I can see no more harm in making an intent in behalf of the specific devisee than the residuary devisee; both, perhaps, disregard the intent of the testator.

The case is one of considerable difficulty by no means free from doubt. Very good reasons can be assigned for either construction, and after hearing them the mind inclines to balance. I was at first strongly inclined to think the words " now owned " were intended to limit the description, rather than state a fact which might be rejected as surplusage; but I am now inclined to the opinion that the clause should be read as if written at testator's death, or that " now owned " should be treated as mere words of description, not qualifying the words " all that part," giving them the same relative sense as the word " my " in the residuary clause.

As to the other point touching the mortgage, the facts found by the jury do not of themselves constitute an estoppel *in pais*. If the defendant, when applied to, in effect denied his possession of the mortgage for the purpose of preventing its discharge, knowing the plaintiff's desire to pay it off, and plaintiff was thereby deceived, and believing that the defendant did not hold the mortgage, was thereby prevented from discharging it, the jury would have been authorized to find the defendant estopped by his fraud from defending the possession under that mortgage.

The Circuit Court should be advised to set aside the verdict and grant a new trial.